**Opinion filed May 25, 2017**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-15-00112-CR**

_____

**TED CLINTON MURRAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-44,172**

## MEMORANDUM OPINION

The jury convicted Ted Clinton Murray of theft (less than $1,500) with two prior theft convictions. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(D) (West Supp. 2016). The jury assessed Appellant's punishment at confinement for two years in the State Jail Division of the Texas Department of Criminal Justice. The jury also assessed a fine of $1,000. In two issues on appeal, Appellant contends that the trial court erred when it denied (1) his requested jury instruction under Article 38.23 of the Texas Code of Criminal Procedure and (2) his motion for a

directed verdict based upon his claim of being illegally searched and illegally arrested. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). We affirm.

*Background Facts*

On August 26, 2014, Caleb Savell, the lead pawnbroker at EZ Pawn in Odessa, was outside the store when he noticed Appellant exiting the store with a blue electric guitar. Suspicious, Savell checked to see if the guitar had been sold by the store. When Savell determined that the guitar had not been sold, he reported the matter to his manager. Jessica Brown, the manager at EZ Pawn, watched surveillance footage of Appellant walking out of the store with the guitar without paying for it. Brown then called the police to file a report. The video depicting Appellant carrying the guitar out of the store without paying for it was admitted during Brown's testimony, and Savell identified Appellant in open court as the person who took the guitar.

Officer Taylor Miley and Corporal Mike Troglin of the Odessa Police Department responded to the call. The officers watched the surveillance video of Appellant grabbing the guitar and walking out of EZ Pawn without paying for the guitar. Corporal Troglin recognized Appellant from the surveillance video as the person stealing the guitar.

Officer Miley and Corporal Troglin never attempted to obtain a warrant for Appellant's arrest. Corporal Troglin knew where Appellant lived and drove to Appellant's house after leaving EZ Pawn. On his first visit to the house, Corporal Troglin left after finding that Appellant was not home. About three hours later, Corporal Troglin returned to Appellant's house and saw the silver Cadillac that witnesses saw Appellant driving as he left EZ Pawn. Corporal Troglin observed the vehicle parked in the driveway with what appeared to be the stolen guitar sitting on the front passenger seat.

Corporal Troglin testified that, after he saw the guitar in the front seat of the vehicle, he tried to make contact with Appellant in the house. He stated that the garage and kitchen doors were open and that he saw people moving around in the home. According to Corporal Troglin, he entered the house after a male "kind of motioned" for him to enter. Corporal Troglin testified that he asked Appellant's mother, Jackie Murray,[1] where Appellant was located and that she told him "that [Appellant] was in the backyard in a small house where he resides."

After making contact with Appellant, Corporal Troglin detained him. Corporal Troglin testified that Murray allowed him to get the guitar out of the vehicle. Corporal Troglin contacted the EZ Pawn managers to come to the residence to identify the guitar. They determined that the guitar in the vehicle was the one stolen from EZ Pawn. Corporal Troglin then arrested Appellant.

Appellant called Murray as his only witness during the defense's case-in-chief. She testified that she lived at the same address as Appellant. She further testified that the doors to the house were open but that she did not invite the police officer into the house. She stated that her grandson called her to the kitchen where she saw an officer with his gun out. According to her, the officer never knocked or stated who he was, and she did not give him permission to enter the house.

At the conclusion of the guilt/innocence phase of trial, Appellant moved for a directed verdict of acquittal, arguing that Corporal Troglin's warrantless entry into the home and his warrantless arrest of Appellant violated the Fourth Amendment. The trial court denied his motion. Appellant then requested a jury instruction under Article 38.23. The trial court denied the requested instruction, finding that, while there was a dispute as to whether Corporal Troglin had consent to enter Appellant's

---

[1]We will refer to Appellant's mother as "Murray" in this opinion.

mother's premises, Appellant lived in a separate, adjacent structure that was neither searched nor entered. The trial court concluded that Appellant's arrest was lawful.

*Analysis*

In his second issue, Appellant contends that the trial court erred in denying his motion for a directed verdict. A challenge to the trial court's denial of a motion for a directed verdict or instructed verdict is treated as a challenge to the sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). As noted previously, Appellant did not base his motion for directed verdict on a claim of insufficient evidence. Instead, he based the motion on claims of an illegal search and an illegal arrest. Appellant makes the same argument on appeal. Appellant has not cited any authority, and we have found none, that authorizes a directed verdict of acquittal for an illegal search or an illegal arrest. To the contrary, if an officer violates a person's privacy rights by conducting an illegal search or seizure, the remedy is the exclusion in a criminal proceeding of the fruits of the officer's search or seizure under the exclusionary rule. *See Miles v. State*, 241 S.W.3d 28, 36 (Tex. Crim. App. 2007) (discussing Article 38.23). Accordingly, we will treat Appellant's second issue as a challenge to the sufficiency of the evidence.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may

4

have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

There was abundant evidence in this case supporting Appellant's conviction for theft with two prior theft convictions. The prosecutor offered the judgments from Appellant's two prior theft convictions at the outset of the State's case-in-chief. With respect to the instant offense, there was an eyewitness that observed Appellant steal the guitar from the store. Additionally, the theft was visually recorded on the pawnshop's video surveillance system, and the recording was admitted into evidence. After Corporal Troglin recognized Appellant from the video, he went to Appellant's home and subsequently found the guitar in Appellant's vehicle. Even if we were to find that the subsequent identification of the guitar should have been suppressed, we would still consider it in conducting our review of the sufficiency of the evidence. *See Winfrey*, 393 S.W.3d at 767. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements of the alleged offense beyond a reasonable doubt. We overrule Appellant's second issue.

In his first issue, Appellant argues that the trial court erred in denying his request for an Article 38.23 jury instruction. In analyzing a complaint of jury charge error, we first determine whether error existed in the charge. *Middleton v. State*, 125

S.W.3d 450, 453 (Tex. Crim. App. 2003); *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985). If error existed, we then determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When a defendant properly preserves error, reversal is required if the error caused some harm. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171.

Article 38.23(a) precludes the admission of evidence obtained in violation of the constitution or laws of the State of Texas or the Constitution or laws of the United States of America. The article further provides:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

CRIM. PROC. art. 38.23(a). A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

A defendant is entitled to the submission of a jury instruction to disregard evidence when (1) the evidence heard by the jury raises a fact issue, (2) the evidence on that fact is affirmatively contested, and (3) that contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* However, "if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence." *Id.*

Appellant contends that an Article 38.23 jury instruction was mandatory because there was a disputed fact issue as to whether Corporal Troglin had consent to enter the home. The trial court denied the requested instruction, finding that,

while there was a dispute as to whether Corporal Troglin had consent to enter Appellant's mother's home, Appellant lived in a separate, adjacent structure that was neither searched nor entered. Accordingly, the trial court determined that the dispute as to whether Corporal Troglin had consent to enter the home was not material to the question of the lawfulness of Corporal Troglin's subsequent search and seizure. This determination related to the third element for obtaining an instruction under Article 38.23. *See id.* In this regard, the Court of Criminal Appeals has "long construed Article 38.23(a) to require that a criminal accused suffer a direct injury to his own rights before he can invoke its exclusionary remedy." *Miles*, 241 S.W.3d at 47 (Price, J., concurring); *see Fuller v. State*, 829 S.W.2d 191, 201–02 (Tex. Crim. App. 1992).

Murray's testimony only addressed Corporal Troglin's initial entry into the home where she resided. Murray did not testify about any facts concerning Appellant's residency in another house located on the property or Corporal Troglin's testimony that Murray subsequently permitted him to retrieve the guitar from Appellant's vehicle. These were facts that were material to the lawfulness of Corporal Troglin's challenged search. However, Appellant did not present any evidence affirmatively contesting these matters.

With respect to the warrantless arrest, we disagree with Appellant's assertion that Corporal Troglin did not have authority to make a warrantless arrest of Appellant for a misdemeanor offense. Article 18.16 provides:

> Any person has a right to prevent the consequences of theft by seizing any personal property that has been stolen and bringing it, with the person suspected of committing the theft, if that person can be taken, before a magistrate for examination, or delivering the property and the person suspected of committing the theft to a peace officer for that purpose.

CRIM. PROC. art. 18.16 (West 2015). A police officer may make an arrest for theft pursuant to Article 18.16 provided that he or she has probable cause for making the arrest. *Lewis v. State*, 598 S.W.2d 280, 284 (Tex. Crim. App. [Panel Op.] 1980). Additionally, Article 14.01(b) provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." CRIM. PROC. art. 14.01(b). The theft statute precludes the unlawful appropriation of another person's property, and Appellant was continuing to "appropriate" the guitar when Corporal Troglin arrested him. PENAL §§ 31.01(4), 31.03(b); *see State v. Palmer*, 313 N.W.2d 648, 652 (Neb. 1981) (interpreting Article 14.01 in considering the legality of a warrantless arrest made in Texas for a person in possession of stolen property). Accordingly, we conclude that the trial court did not err in denying Appellant's request for an Article 38.23 instruction.

Moreover, assuming arguendo that the trial court erred in denying the Article 38.23 instruction, the error was harmless. Under the *Almanza* "some harm" standard, the error must be evaluated in light of the entire jury charge, and courts should consider the state of the evidence, including the contested issues and weight of probative evidence; the argument of counsel; and any other relevant information revealed by the record of the trial as a whole. 686 S.W.2d at 171. Neither the Fourth Amendment exclusionary rule nor Article 38.23 requires the suppression of evidence that was not "obtained" as a result of some illegality. *See State v. Jackson*, 464 S.W.3d 724, 731 (Tex. Crim. App. 2015).

The only evidence that was obtained after Corporal Troglin entered Murray's home and arrested Appellant was the retrieval of the guitar from Appellant's car and the identification of the guitar by the manager from the pawnshop. Savell's observation of Appellant stealing the guitar from the pawnshop, the surveillance video depicting Appellant stealing the guitar from the pawnshop, Corporal Troglin's identification of Appellant from the video, and Corporal Troglin's initial observation

of the guitar in Appellant's vehicle all preceded the conduct that Appellant challenges. This overwhelming evidence of Appellant's guilt would not have been affected had the jury been given the requested instruction. Accordingly, we conclude that Appellant did not suffer harm from the denial of the requested instruction. We overrule Appellant's first issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


May 25, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.