

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0955-19

### JONATHAN WILLIAM DAY, Appellant

### v.

### THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIRST COURT OF APPEALS
## TARRANT COUNTY

**Newell, J., delivered the opinion of the unanimous Court.**

Appellant Jonathan Day fled after being told that he was under arrest and that there was an active arrest warrant out for him. He was charged with and convicted of evading arrest or detention. That offense requires intentional flight from an officer "attempting lawfully to arrest or detain."[1] The court of appeals found the evidence insufficient to prove

---

[1] Tex. Pen. Code § 38.04.

that the attempted arrest or detention was "lawful." It held that while Appellant's initial detention may have been justified, his continued detention, during which Appellant fled after police discovered an outstanding arrest warrant for him, was not. The court of appeals reversed the conviction and ordered an acquittal.[2] We reverse the court of appeals judgment because a jury could rationally find the officer's attempted arrest or detention was lawful in light of the outstanding warrant.

## Offense

Richland Hills City Marshal C.W. Heizer was waiting in his truck three houses south of a residence where he planned to serve a traffic warrant on Danny Branton. However, he didn't know what Danny Branton looked like. Around 8:45 in the morning, Heizer spotted two vehicles and two bicycles pull up in the driveway of the residence. Six people had arrived: Appellant, who had driven up in a white SUV with no passengers; Mr. Acorn, who had pulled in behind Appellant in a gold truck with two passengers (Danny Branton in the front, and a female, Ms.

---

[2] *Day v. State*, 01-18-00289-CR, 2019 WL 2621740, at *4 (Tex. App.—Houston [1st Dist.] June 27, 2019) (mem. op., not designated for publication).

Curlee, in the back); and the two cyclists, one of whom was later identified as a Mr. Kuhl.

Appellant got out of the SUV and was talking to Mr. Kuhl, but nobody got out of the gold truck, which had its windows rolled down. Heizer, in his uniform and with his body camera on, approached the group on foot and asked where Danny Branton was. Nobody responded. When Mr. Acorn started to back his truck out, Heizer stopped him and told everybody that he needed to see their identifications. Only Appellant and Mr. Kuhl handed Heizer identification.

Two people left the scene without giving identification: the other cyclist and Danny Branton, who got out of the truck and went inside the house before Heizer could stop him. Mr. Acorn and Ms. Curlee stayed in the truck and wrote down their information for Heizer. Heizer felt at this point he was investigating the offense of "hindering apprehension," and he proceeded to identify everyone and check for warrants.

Appellant told Heizer that he needed to go to work and wanted to leave, explaining that he was not Danny Branton. Heizer responded to wait a few minutes so that he could find out who everybody was. Appellant ultimately admitted to Heizer that he had warrants out of Fort Worth, but Heizer indicated he was "not interested in Fort Worth." Heizer

then called in the information for the four remaining individuals to dispatch; all four had warrants. The license check revealed that Appellant had a warrant for a jailable offense out of Haltom City in Tarrant County.

When Appellant realized that Heizer was going to arrest him on the county-level warrant, he turned around and started walking towards the white SUV. Appellant told Heizer he needed to make a phone call. Heizer responded that it was okay, but that Appellant should stay there and not go anywhere else. Appellant then reached into the SUV, rolled up the driver's side window, locked the door, shut the door, and then went around the front of the SUV. Heizer told him, "You can't leave, you're under arrest." Appellant stated, "I'm not leaving." But, he was. He continued walking away and soon broke out into a run. He was caught about three blocks away.

**Trial**

The State charged Appellant with evading arrest or detention.[3] He filed a motion to suppress all evidence obtained after Heizer found out that Appellant was not Danny Branton. At the hearing on the motion to

---

[3] Though the court of appeals focuses upon whether the evidence was sufficient to prove a lawful detention, the information authorized conviction for evading either a detention or an arrest.

suppress, counsel argued that the trial court should suppress anything after the point Appellant said "I want to go, I need to be at work" because from that point on the continued detention was illegal. The trial court denied the motion, stating that "the objective facts were that [Heizer] did see the car drive up or see the truck drive up" and that the short time he held Appellant was not unreasonable. The court told defense counsel that he could get an Article 38.23 instruction at trial if the issue were raised again.

At the close of evidence, defense counsel re-urged his motion to suppress based on the "illegal detention" and the trial court denied it, explaining that Heizer did have some facts that would allow him to detain Appellant regardless of Heizer's subjective state of mind. Counsel moved for a directed verdict on the ground that the State had failed to prove Appellant was fleeing a lawful detention or arrest. The trial court denied the motion because it was up to the jury to decide whether the State had proven Appellant was being lawfully detained or arrested.

Counsel asked for an Article 38.23 instruction. Under both the Article 38.23 instruction and the application paragraph in the jury charge, the jury was instructed to acquit Appellant if it found that Heizer's detention or attempt at detention was unlawful. Under the Article 38.23

instruction, the jury was instructed to disregard evidence of the warrant and the flight if it believed that the prolonged detention was unlawful, which would necessarily merit a "not guilty" verdict. Under the application paragraph, the jury could consider the evidence of the warrant and the flight, but it was instructed to find Appellant not guilty if it believed that the Appellant's flight was from an unlawful attempt to detain him. The jury found Appellant guilty, and the trial court assessed Appellant's punishment at 220 days in county jail.

**Appeal**

On direct appeal, Appellant acknowledged that this Court, in *Woods v. State*, held that a pretrial motion to suppress is not a proper way to challenge the legality of an arrest in a prosecution for evading arrest because the "lawful detention" portion of the statute is an element of the offense.[4] Rather, when a lawful detention is an element of the crime, a failure of the State to prove beyond a reasonable doubt that the detention was lawful must result in an acquittal of the defendant. So, Appellant argued that he was entitled to an acquittal based upon insufficient

---

[4] *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005); *York v. State*, 342 S.W.3d 528, 544 (Tex. Crim. App. 2011).

evidence. In so doing, he argued that his detention was "unlawful, irrespective of the later discovery of the warrant."[5]

The court of appeals agreed, holding that the detention should have ended once Heizer determined that Appellant was not Branton.[6] The court also agreed with Appellant that the later discovery of his warrant did not change the character of the detention.[7] The court held that the evidence was insufficient to establish that Appellant's detention was lawful.[8] Implicit in this holding is the conclusion that the unreasonably prolonged detention tainted the subsequent discovery of the arrest warrant. And, without the discovery of the warrant, Appellant fled an illegal detention. The appellate court reversed the trial court's judgment of conviction and rendered a judgment of acquittal.[9]

---

[5] Appellant's Direct Appeal Br. 14 ("A warrant would have normally given Heizer authority to arrest Appellant, assuming that the initial detention was lawful. However, Heizer did not know about this warrant when he chose to detain Appellant—essentially, he refused Appellant's request to let him leave after Heizer found out that he was not Branton. This made Appellant's detention unlawful, irrespective of the later discovery of the warrant.") (internal citations omitted).

[6] *Day*, 2019 WL 2621740, at *3.

[7] *Id*. at *2, 3.

[8] *Id*. at *4.

[9] *Id*.

We granted the State Prosecuting Attorney's petition to address three issues.[10]  First, can the officer's attempt to detain or arrest a suspect, which is otherwise lawful, be tainted by an earlier illegality and thereby negate the lawful-arrest-or-detention element of evading, just as evidence is tainted under fruit-of-the-poisonous-tree?  Second, and perhaps alternatively, will discovery of a valid arrest warrant necessarily render an attempted seizure on the warrant "lawful" (despite an earlier illegality) for purposes of evading arrest?  Third, and finally, if an earlier illegality can taint the officer's attempted detention, does discovery of a warrant provide an independent source for the detention or attenuate the taint?

The answer to the first question is "no."  We are not dealing with a suppression of evidence issue; we are dealing with a sufficiency of the evidence issue.  Evidentiary exclusionary rules serve a completely different purpose than the evading arrest or detention statute.  The former deals with the penalty designed to deter future police misconduct,[11] while the latter punishes a person who flees lawful police

---

[10] The SPA does not challenge the court of appeals' conclusion that the initial detention was unreasonably prolonged.  We therefore proceed on the assumption that it was.

[11] *State v. Mazuca*, 375 S.W.3d 294, 300 (Tex. Crim. App. 2012) ("The Fourth Amendment exclusionary rule exclusively serves a function of deterrence, to discourage undue police encroachment upon the privacy and personal integrity of the citizenry.").

conduct. Doctrines such as "the fruit of the poisonous tree", "attenuation of the taint", and "the independent source doctrine" go to the question of whether evidence may be introduced at trial; they do not render otherwise lawful police conduct unlawful.[12] In light of the answer to the SPA's first issue, there is no need to address the second or third issues, and we dismiss them as improvidently granted.[13]

## Standard of Review

Legal sufficiency requires that a rational jury could find each essential element of the offense beyond a reasonable doubt.[14] In a

---

[12] *Hudson v. Michigan*, 547 U.S. 586, 593 (2006) (noting attenuation can occur when the causal connection is remote or the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained; "'[t]he penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve'") (quoting *United States v. Ceccolini*, 435 U.S. 268, 279 (1978)). *See Segura v. United States*, 468 U.S. 796, 804 (1984) ("[T]he exclusionary rule reaches not only primary evidence obtained as direct result of illegal search or seizure, but also evidence later discovered and found to be derivative of illegality or 'fruit of the poisonous tree.'") (internal citation omitted); *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (the attenuation doctrines allows the trial court to admit evidence "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance"; "the independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source").

[13] If we were to assume that the statutory phrase "attempting lawfully to arrest or detain" incorporates exclusionary rule principles, the SPA observes that both the United States Supreme Court and this Court have held that discovery of a pre-existing and lawful arrest warrant can attenuate any taint from an otherwise illegal detention. *See Strieff*, 136 S. Ct. at 2062–63 (holding that a pre-existing, valid warrant for arrest attenuated the taint from an unlawful traffic stop); *Mazuca*, 375 S.W.3d at 310 (same). We need not address *how* the "attenuation of the taint" doctrine (or the "independent source doctrine") applies in this case because we hold that the statutory phrase "attempting lawfully to arrest or detain" does not incorporate these exclusionary rule principles.

[14] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

sufficiency review, the essential elements of the offense are those of a hypothetically correct jury charge for the case.[15] The hypothetically correct jury charge is one that accurately sets out the law and adequately describes the offense for which the defendant was tried without increasing the State's burden of proof or restricting the State's theories of liability.[16] When reviewing the sufficiency of the evidence, we consider all the admitted evidence in the light most favorable to the verdict.[17] The jury is the sole judge of the credibility of a witness's testimony and the weight to assign to that testimony.[18] This means that the jury can believe all, some, or none of a witness's testimony.[19]

In some cases, however, legal sufficiency turns upon the meaning of the statute under which the defendant is being prosecuted.[20] We ask if certain conduct actually constitutes an offense under the statute.[21]

---

[15] *Id.* at 14 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

[16] *Id.*

[17] *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

[18] *Jackson*, 443 U.S. at 319.

[19] *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020) (citing *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974)).

[20] *Long v. State*, 535 S.W.3d 511, 519 (Tex. Crim. App. 2017) (citing *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015)).

[21] *Id.*

When we interpret statutes, we look to the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment.[22] If the plain language is clear and unambiguous, our analysis ends because "the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."[23] Statutory interpretation is a question of law that we review *de novo*.[24]

## Analysis

There is no dispute regarding the validity or existence of a warrant authorizing Appellant's arrest at the time Appellant fled from Heizer's attempt to arrest him. Appellant argues instead that Heizer could not lawfully arrest or detain him because the initial detention was illegally prolonged and therefore any subsequent arrest was the fruit of the poisonous tree. Consequently, the question before us is whether the word "lawfully", as it appears in the statute, incorporates exclusionary rule principles. We hold that it does not.

---

[22] *Id*. at 520; *Nguyen v. State*, 359 S.W.3d 636, 642 (Tex. Crim. App. 2012) (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)).

[23] *Long*, 535 S.W.3d at 521.

[24] *Id.* at 519; *Nguyen*, 359 S.W.3d at 641.

A person commits an evading offense "if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."[25]  The text of the statute is plain: it requires proof that an attempted arrest or detention is lawful at the time the person flees.  Though the statute requires that the officer have lawful authority to attempt an arrest or detention, the statute contains no exceptions or defenses based upon the officer's conduct before or after a person flees the officer's attempt to arrest or detain.  The statute is directed at the conduct of the person, not the officer.  The statute punishes those who refuse to submit to lawful authority at the moment an officer attempts an arrest or detention by adding an additional penalty for that refusal to comply.[26]

This stands in contrast to the purpose of the federal and state exclusionary rules.  As the Supreme Court has observed of the federal exclusionary rule, its sole purpose is to deter future Fourth Amendment

---

[25] TEX. PEN. CODE § 38.04.

[26] *Alejos v. State*, 555 S.W.2d 444, 449 (Tex. Crim. App. 1977) (op. on reh'g) (noting that the evading arrest statute's "intent is to deter flight from arrest by the threat of an additional penalty, thus discouraging forceful conflicts between the police and suspects").  Whether the defendant's knowledge of that lawfulness of the attempted arrest or detention is also an element of the offense is an issue currently pending before this Court.  *See Nicholson v. State*, 594 S.W.3d 480, 482 (Tex. App.—Waco 2019, pet. granted).  The court of appeals had no occasion to weigh in on the sufficiency of the evidence to prove Day's knowledge of the legality of the detention in light of its holding that there was no legal detention in the first place.

violations by law enforcement.[27]  Though the Texas exclusionary rule is both statutory and broader in scope, it is still based upon the federal exclusionary rule and thus shares a similar purpose.[28]  The text of Article 38.23 addresses the admissibility of evidence at trial when the law has been violated.  Doctrines such as "the fruit of the poisonous tree", "attenuation of taint", and "the independent source doctrine" refine the situations in which the illegally obtained evidence can be admitted at or excluded from trial.[29]  They affect the penalty levied against the officer for engaging in unlawful police conduct;[30] they do not transform an otherwise lawful arrest into an unlawful one.  As the United States Supreme Court observed in *Utah v. Strieff*, an arrest pursuant to a valid warrant is a

---

[27] *See Davis v. United States*, 564 U.S. 229, 236–37 (2011).

[28] *See Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010).

[29] *See Armstrong v. State*, 550 S.W.2d 25, 31 (Tex. Crim. App. 1976) (the fruit of the poisonous tree doctrine "serves to exclude as evidence not only the direct products but also the indirect products of Fourth Amendment violations"); *Johnson v. State*, 871 S.W.2d 744, 751 (Tex. Crim. App. 1994) ("[T]he attenuation doctrine is not an exception to Art. 38.23, but rather is a method of determining whether evidence was 'obtained' in violation of the law."); *Wehrenberg v. State*, 416 S.W.3d 458, 467–68 (Tex. Crim. App. 2013) (much like evidence for which a prior taint has been attenuated, evidence obtained pursuant to an independent source following a prior instance of unlawful police conduct "is not 'obtained' in violation of the law and is thus not subject to suppression").

[30] *Lego v. Twomey*, 404 U.S. 477, 489 (1972) ("exclusionary rules are very much aimed at deterring lawless conduct by police and prosecution").

"ministerial act" that is "independently compelled" regardless of whether the initial detention is unlawful.[31]

Further, in the context of the Texas exclusionary rule, we have observed that Article 38.23 contemplates that a crime has already been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the previously committed crime.[32]   Thus, the officers must act illegally in obtaining existing evidence of an offense.[33]   Just as evidence that a defendant resisted arrest does not exist before an arrest because the resisting has not yet happened, evidence of evading arrest does not exist before the attempted arrest because the evading has not yet happened.[34]  As we noted in *State v. Iduarte*, the exclusionary rule was designed to protect individuals from

---

[31] *Strieff*, 136 S. Ct. at 2062–63.  Notably, the subsequent discovery of a pre-existing arrest warrant does not render an initial, or even unreasonably prolonged detention, lawful. *See, e.g., State v. Jackson*, 464 S.W.3d 724, 733 (Tex. Crim. App. 2015) (explaining that the primary illegality in *Mazuca*—the illegal detention—was still underway and was "still illegal" at the later point in time at which the detaining officers discovered the valid arrest warrant). Rather, the subsequent discovery of a pre-existing warrant renders a subsequent arrest lawful. *Id.* at 732 n.13 ("It almost goes without saying that when police officers unlawfully detain an individual and only then discover an outstanding arrest warrant, they may—indeed, they should—arrest him pursuant to that warrant.").  Consequently, the evading arrest or detention statute allows prosecution even though the initial detention may have been unlawful or unreasonably prolonged.

[32] *Martinez v. State*, 91 S.W.3d 331, 340 n.35 (Tex. Crim. App. 2002) (discussing *State v. Mayorga*, 901 S.W.2d 943, 946 (Tex. Crim. App. 1995) (plurality opinion)).

[33] *Id.*

[34] *See Mayorga*, 901 S.W.2d at 946.

the use at trial of evidence that was obtained in an unlawful manner, but it does not provide limitless protection to one who chooses to react illegally to some prior unlawful act by a state agent.[35]  Here, evidence of the charged offense—Appellant's flight—did not exist before Heizer's challenged actions—prolonging the detention—because the charged offense had not yet occurred; the evidence showed a subsequent independent criminal act that was not causally connected to any evidence discovered through an unlawful detention by Heizer.[36]  Therefore, as in *Iduarte*, exclusionary rule principles, at least in the context in which they are being raised in this case, do not apply to the offense of evading arrest.[37]

Lastly, holding that the evading arrest statute does not incorporate exclusionary rule principles is consistent with our previous holdings that it is inappropriate to consider the lawfulness of an officer's attempted arrest or detention as a suppression issue in evading cases.  For example,

---

[35] *State v. Iduarte*, 268 S.W.3d 544, 551 (Tex. Crim. App. 2008).  *See also Martinez*, 91 S.W.3d at 340 (Article 38.23 deals with exclusion of illegally obtained evidence of a *prior* crime; it does not provide any protection to commit a *new* crime—including excluding any evidence of that new crime because a law enforcement officer violated the law first).

[36] *See Iduarte*, 268 S.W.3d at 551.

[37] *Id.* (concluding that the exclusionary rule did not apply to the case because evidence of Iduarte pointing a gun at the officer was a subsequent independent criminal act of assault that was not casually connected to the officer's prior unlawful entry into Iduarte's apartment).

in *Woods v. State*, the defendant, charged with evading detention, sought to challenge the lawfulness of his detention in a pre-trial motion to suppress.[38] The defendant argued, much as Appellant does here, that he was initially detained illegally and the subsequent arrest should be suppressed under the fruit-of-the-poisonous-tree doctrine.[39] We rejected this argument because it was improperly raised in a pre-trial motion to suppress when it should have been the subject of a directed verdict.[40] As we later said in *York v. State*, when the validity of an arrest or detention is an element of the charged offense, litigating the validity of the seizure as a suppression issue—either pretrial or during trial—is inappropriate.[41] Instead, the issue should simply be litigated as part of the State's case at trial.[42] Implicit in this holding is the recognition that exclusionary rule principles are focused upon the evidence introduced at trial.

In this case, Appellant admitted to Heizer that he had an outstanding warrant from one jurisdiction; Heizer discovered a second

---

[38] *Woods*, 153 S.W.3d at 414.

[39] *Id.* at 414–15.

[40] *Id.* 415–16.

[41] *York*, 342 S.W.3d at 544 (discussing *Woods*, 153 S.W.3d at 414).

[42] *Id.*

warrant from another. And though Heizer said he was only worried about warrants out of his jurisdiction, Heizer was authorized to execute an arrest warrant from any county in Texas.[43] Appellant argues, however, that the warrant doesn't matter because the statute's requirement that the arrest or detention must be "lawful" "means, at a minimum, that the detention must be lawful at its inception . . . if the initial detention was unlawful, it remained that way."[44] But even Appellant recognizes that the initial detention, that is, the detention that occurred before Appellant turned over his identification, was lawful. So, Appellant seems to argue that if the detention is illegal at any point before the flight, the statute is not satisfied.[45] That's a fruit-of-the-poisonous-tree argument, an application of an exclusionary rule principle that is not incorporated into the phrase "attempting lawfully to arrest or detain." The question before the jury was the character of the detention at the moment of flight. The jury was entitled to find, from the evidence before it, that at the moment

---

[43] TEX. CODE CRIM. PRO. art. 15.06 (A "warrant of arrest . . . shall extend to any part of the State; and any peace officer to whom said warrant is directed, or into whose hands the same has been transferred, shall be authorized to execute the same in any county in this State.").

[44] Appellant's Br. 9–10.

[45] *But see Mayorga*, 901 S.W.2d at 945 ("[R]esisting arrest is unlawful in Texas, and it is no defense to prosecution that the arrest or search was unlawful.").

of flight, the officer was attempting to lawfully detain Appellant on the existing arrest warrant.[46]

## Conclusion

Looking at the evidence before the jury, it is undisputed that at the time Appellant fled the scene there was an outstanding warrant for his arrest. From this evidence, a rational juror could have found that Appellant fled from an attempted and lawful arrest or detention regardless of whether the initial detention was unduly prolonged. Consequently, the evidence is legally sufficient to support the verdict. We reverse the judgment of the court of appeals and remand the case so it may address Appellant's remaining unaddressed claims.

Delivered: December 16, 2020

Publish

---

[46] State's Br. 11–12.