## State of Vermont v. Timothy J. Alexander

[595 A.2d 282]

No. 88-057

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed June 14, 1991

*Gary S. Kessler*, Supervising Appellate Prosecutor, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *Anna Saxman* and *William A. Nelson*, Appellate Defenders, Montpelier, for Defendant-Appellant.

**Morse, J.** Defendant appeals his conviction, after court trial, for driving under the influence of intoxicating liquor. He moved to suppress evidence obtained when he was stopped for running a police roadblock, claiming that the roadblock was illegal under *State v. Martin*, 145 Vt. 562, 496 A.2d 442 (1985). The trial court denied the motion because defendant had "abandoned the protection" of the fourth amendment by driving through the roadblock, and because the police had probable cause to arrest defendant for failing to stop. We hold defendant's motion was improperly denied and reverse and remand.

On the night of May 31, 1986, the Vernon sheriff's department established a roadblock, in accord with its department policy, to screen northbound cars for motorists driving under the influence. At least two cruisers were parked at the roadblock with their blue lights flashing. The roadblock was preceded by a thirty-inch, luminous sign reading "DWI roadcheck" three hundred feet before the stop. The officers at the stop were in uniform and wearing reflectorized vests, and each officer carried an illuminated flashlight with a directional cone.

At about 1:30 a.m., as Deputy Tarbox was standing in the middle of the road to flag oncoming traffic, a red pickup truck appeared at the roadblock. As the deputy signalled the truck, it jerked to a stop, then began to move again. Deputy Tarbox moved out of the way, and the truck stopped again, then traveled past the stop. Because defendant failed to stop at the roadblock, Deputy Weyant got into his cruiser and followed the truck for about a quarter mile, where it pulled over at the first intersection. As Deputy Weyant asked defendant for his license, he smelled alcohol and asked defendant whether he had had anything to drink. Defendant admitted that he had had "two drinks" and, upon exiting the vehicle, was unable to perform routine dexterity tests. He was taken to the police station and charged with driving under the influence. There was no evidence that Officer Weyant stopped defendant because of erratic driving or other suspicion of driving under the influence of alcohol. The parties agreed, and the trial court found, that the offi-

cer pursued and stopped defendant because he failed to stop at the roadblock.

■ The trial court was correct that the authorities had ample cause to stop defendant after he proceeded through the roadblock. 23 V.S.A. § 1012(a) makes it a crime for a motorist not to "promptly and carefully stop when signalled to stop by an enforcement officer wearing insignia which identifies the officer." We are concerned here, however, with the issue of whether defendant "abandoned" his challenge to the legality of the roadblock. We hold that he did not.

■ It is well established in Vermont that a defendant who believes he is illegally detained may not resort to self-help. *In re Provencher*, 127 Vt. 558, 562, 255 A.2d 180, 183 (1969) (escape from jail not justified where detention illegal); see also *State v. Peters*, 141 Vt. 341, 347, 450 A.2d 332, 335 (1982) (assault on a law enforcement officer in course of arrest, pursuant to a warrant subsequently determined to be invalid, not justified). Government by rule of law "requires that we recognize its authority, and recognize likewise our duty to challenge its application by resort to proper judicial proceedings, not self-help." *Provencher*, 127 Vt. at 562, 255 A.2d at 183. Thus, if a driver runs an illegal police roadblock when reasonably signalled by the police to stop, he commits a crime.

That an individual may not resort to self-help and may be prosecuted for forceful self-help, however, is an issue distinct from the individual's right to challenge the validity of the detention. Thus, an individual instructed by a uniformed police officer to stop must do so. A person who instead flees may be punished for fleeing but does not "abandon" the right to challenge, in defense of a different crime, the legality of the initial stop. Although government by law requires that we recognize authority, it does not require that we be subjected to all consequences of baseless stops without legal recourse. Assuming a stop is illegal, the question is whether

> "the evidence to which [defendant objects] has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*State v. Emilo*, 144 Vt. 477, 483, 479 A.2d 169, 172 (1984) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

*Emilo* involved the suppression of evidence obtained after an illegal stop. The defendant was driving on an isolated road at 3 a.m. when a police officer, who had just investigated a reported robbery and concluded that the store's alarm system had malfunctioned, noticed the car in which the defendant was driving. The car had no front license plate and a Massachusetts plate in back. The officer testified that there was nothing to tie the car to the reported robbery, that he did not believe the defendant was attempting to elude him, and that he stopped the car simply based on a "hunch." Once the officer had stopped the car, he obtained the evidence that led to conviction on the charge of driving without consent of the owner. We held that the evidence "had been come at by exploitation" of unlawful police conduct and should have been suppressed.

In this case, there was no evidence that Officer Weyant suspected defendant was driving under the influence. The sole reason Deputy Weyant finally stopped defendant was for failure to stop at the roadblock. Because defendant's failure to stop violated § 1012, the deputy's actions were legal. The stop, however, would not have occurred but for the roadblock. Nevertheless, merely because the roadblock caused the stop in a "but for" sense is not sufficient to require suppression of the fruits of the stop. *Brown v. Illinois*, 422 U.S. 590, 603 (1975). Rather, we must analyze whether defendant's violating § 1012 was an intervening cause that broke the causal chain between the assertedly illegal roadblock and the deputy's stop. *Id.* at 603–04.

Several federal courts have held that defendant's commission of a criminal act in the course of an illegal arrest or search may be sufficient to dissipate the taint of illegality. *United States v. Bailey*, 691 F.2d 1009, 1017–18 (11th Cir. 1982) (defendant's flight from and exchange of blows with officers illegally arresting him were a "new, distinct crime" and evidence seized pursuant to arrest for that crime need not be suppressed); see also *United States v. King*, 724 F.2d 253, 256 (1st Cir. 1984) (shooting officer conducting an illegal search); *United States v. Garcia*, 516 F.2d 318, 319–20 (9th Cir. 1975) (high speed chase from illegal checkpoint); *United States v. Nooks*, 446 F.2d 1283, 1287–88 (5th Cir. 1971) (high speed chase and shooting at officer attempting an illegal arrest). Strong policy reasons support treating these actions as "distinct" crimes subject to prosecution

despite their close causal nexus to illegal police conduct. See *Bailey*, 691 F.2d at 1017 ("extending the fruits doctrine to immunize a defendant from arrest for *new* crimes gives a defendant an intolerable *carte blanche* to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct"). And some of these crimes will be sufficiently serious to allow searches and arrests that will provide evidence that would have been suppressed under the primary illegal search or arrest.

If § 1012 is treated as a "distinct" crime, however, the goal of the exclusionary rule, controlling police misconduct, will not be served. See *United States v. Ceccolini*, 435 U.S. 268, 274 (1978) (causal connection determined by looking at fundamental tenets of exclusionary rule). Police could be less fastidious in establishing roadblocks or could even make random stops of drivers on less than probable cause, and when drivers failed, for whatever reason, to stop, any evidence gathered at the illegal stop could not be suppressed. The exclusionary rule requires more, and the state cannot pass a statute that effectively eviscerates a constitutional doctrine by "curing" an illegal police action.

The roadblock must be analyzed for legality. If the roadblock was legal, then the evidence of intoxication resulted from valid police conduct and need not be suppressed. If the roadblock was illegal, defendant did not forfeit his fourth amendment right by violating § 1012(a), and the evidence must be suppressed and the DUI charge dismissed.

■ Because the trial court did not reach the question of legality of the roadblock, we remand for adjudication of that issue.

*Reversed and remanded.*

**Peck, J.,** dissenting. There is no need to reprise the facts and circumstances preceding and surrounding defendant's arrest for DUI. For purposes of this dissent, I am in full agreement with the statement of facts as outlined in the majority opinion. I disagree, however, with the conclusions of law drawn from those facts.

I will bypass comments relating to the legality of the roadblock at this point and return hereafter to that issue. For the

moment, I will say only that I believe its legality or illegality is irrelevant.

This is not a case like *State v. Emilo*, 144 Vt. 477, 479 A.2d 169 (1984), in which an officer stopped a car without the slightest reason to suspect that any motor vehicle offense was being or had been committed. The officer himself testified that the only reason for the stop was a hunch, generated by no more than the fact that he came on the defendant's vehicle late at night, traveling on a road sparsely traveled at that hour. *Id.* at 481, 479 A.2d at 171. There was no erratic driving, speeding, careless and negligent operation, refusal to stop when signaled, or any of the other more common idicia of a moving violation.

In the matter before us here, the facts, as described in the majority opinion, leave no possible doubt that the deputies had probable cause to pursue and stop the vehicle being driven by defendant; in fact, they were eyewitnesses to an offense in progress—actually being committed in their presence.

Regardless of the legality of the roadblock, the officers also witnessed defendant's refusal to stop when signaled to do so by proper authorities, identifiable as such. Under ordinary circumstances, such a refusal is a separate offense, per se, in violation of 23 V.S.A. § 1012(a). Thus, defendant did more, as witnessed by two officers, than run a roadblock; he failed to stop when signaled to do so, which is a separate and distinct offense, having no necessary relationship to DUI checkpoints.

The majority refers to *State v. Peters*, 141 Vt. 341, 450 A.2d 332 (1982), but has conveniently overlooked its essential importance. The decision *expressly* abandons the preceding common law rule which recognized a right to resist an improper arrest, and now requires submittal to an arresting officer and a resort instead to the courts for relief. In *Peters*, the defendant assaulted a police officer who was attempting to place him under arrest; the former asserted the arrest was illegal because of a claimed defective bench warrant and, therefore, he was justified in seeking to escape arrest. This case involves an essentially similar claim. There is more than one way to resist arrest; one is to attack the officer(s) physically, as did the defendant in *Peters*, another is by flight, and still another, in certain circumstances, may be a necessity defense, see, e.g., *State v. Squires*, 147 Vt. 430, 519 A.2d 1154 (1986). Quoting with approval from

*Miller v. State*, 462 P.2d 421, 427 (Alaska 1969), this Court stated:

> We feel that the legality of a peaceful arrest should be determined by courts of law . . . . [O]ne believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court.

*Peters*, 141 Vt. at 345, 450 A.2d at 334.

The underlying principle in *In re Provencher*, 127 Vt. 558, 562, 255 A.2d 180, 183 (1969), is stated to be:

> [W]e are governed by rule of law [which] requires that we recognize its authority, and recognize likewise our duty to challenge its application by resort to proper judicial proceedings, not self-help.

Finally, in *Peters*, 141 Vt. at 346, 450 A.2d at 335, we quoted the following from *State v. Koonce*, 89 N.J. Super. 169, 183, 214 A.2d 428, 435–36 (1965) (emphasis added):

> The right or wrong of an arrest is often a matter of close debate as to which even lawyers and judges may differ. In this era of *constantly expanding legal protections* of the rights of the accused in criminal proceedings, one deeming himself illegally arrested can reasonably be asked to submit peaceably to arrest by a police officer, and to take recourse in his legal remedies for regaining his liberty and defending the ensuing prosecution against him.

I note, too, that in *Miller*, 462 P.2d at 427, the Alaska court recognizes the *good faith* of an officer who mistakenly performs an arrest as a significant factor in resolving cases like the one now before us. I have not heard anyone suggest, regardless of the legality or illegality of the roadblock with which we are concerned here, that the officers at the site acted in less than the utmost good faith, and in reliance on a policy established by their lawful superiors. It is unfair and unreasonable to expect the officers at the checkpoint, particularly those still at the level of "infantry in the field," to be in any position to recognize or make educated decisions on fine points "as to which even lawyers and judges may differ."

The result reached by the majority is neither legally necessary nor inevitable. On the other hand, it weakens the strong

impact of *State v. Martin*, 145 Vt. 562, 496 A.2d 442 (1985), and *State v. Record*, 150 Vt. 84, 548 A.2d 422 (1988), in combating the killing epidemic of drunk drivers which continues to ravage Vermont and the nation.

It seems that every time the Legislature tightens the laws against these criminals, this Court counters with decisions that impede and hamper legitimate law enforcement, threaten the constitutional rights of the people to life and safety, and open new avenues of escape based not on the merits, but on the questionable application of freshly invented legal technicalities, typified by such recent insults to justice as, inter alia, *State v. Kirchoff*, 156 Vt. 1, 587 A.2d 988 (1991), and *State v. Brunell*, 150 Vt. 388, 554 A.2d 242 (1988).

This matter should be affirmed in the interests of the safety and welfare of every citizen in this state, and those who may be visitors within its environs. We should be more concerned with protecting the people against the plague of criminality than with devising new ways of shielding wrongdoers from the consequences of their wilful or irresponsible conduct. I would affirm and demonstrate one way to accomplish that desirable and just goal.