NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 37

No. 2017-365

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Treyez L. McEachin | March Term, 2019 |

Nancy J. Waples, J. (motion to suppress and dismiss and motion for reconsideration); Dennis R. Pearson, J. (judgment)

Sarah George, Chittenden County State's Attorney, Andrew McFarlin and Zachary J. Chen, Deputy State's Attorneys, Burlington, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Rebecca Turner, Appellate Defender, and Anna Saxman and Amanda E. Quinlan, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **ROBINSON, J.** Defendant Treyez McEachin was convicted of three charges pursuant to a conditional plea that preserved his right to appeal the denial of his motion to suppress and dismiss. Defendant was charged with disorderly conduct based on fighting or violent, tumultuous, or threatening behavior, as well as resisting arrest and simple assault on a police officer. He argues that because his conduct in walking toward a police officer was not disorderly, the disorderly-conduct charge should be dismissed. He contends that because the officer then wrongfully prolonged their encounter, all evidence of his subsequent conduct, including his assault of the officer well after he was taken into custody, should be suppressed, and the assault charge

should be dismissed.  We agree that the disorderly-conduct charge should be dismissed, and accordingly reverse the denial of the motion to dismiss that charge.  We affirm the denial of the motion to suppress the evidence underlying the assault charge, and affirm that conviction.

¶ 2.     The evidence presented at the hearing on defendant's motion to suppress and dismiss, viewed in the light most favorable to the State, is as follows.  On New Year's Eve in 2016, four police officers were on foot patrol in Burlington when they received a report that a man was spitting on the window of a local bar.  They went to investigate and found defendant outside the establishment.  One of them, Officer Derek Hodges, said that defendant "was immediately verbally combative"[1] and called the officers "a death squad."  They asked defendant what was going on, and defendant replied that he had been fired from his job.  The officers asked defendant to leave, and he did.

¶ 3.     Minutes later, defendant came walking down the sidewalk back toward the bar.  Officer Hodges could not recall where defendant was initially looking, but said, "I believe we saw each other and made eye contact."  Officer Hodges testified that defendant "changed his trajectory so he was walking directly towards me."  He said defendant "was looking away from me . . . as if he was trying to . . . make it appear that he [wa]s not watching where he was going."  Defendant came within four feet of Officer Hodges, and Officer Hodges put his arm out and pushed defendant back; Officer Hodges said that if he had not done so, they would have collided.  Officer Hodges considered this "an officer safety issue" because of defendant's earlier behavior outside the bar.  Officer Hodges said defendant looked surprised when he pushed him.  Defendant stepped back

---

[1] The trial court found, based on its review of the body-camera footage, that "[a]s he spoke, Defendant's body language was relaxed, and his tone of voice was calm."  In light of our duty given the procedural posture to review the evidence "in the light most favorable to the State," and because the body camera may not have captured the beginning of the officers' interaction with defendant, for the purposes of our nondeferential review of the sufficiency of the evidence as a matter of law, we credit Officer Hodges's testimony that defendant was verbally combative immediately after the officers' arrival.  State v. Scales, 2019 VT 7, ¶ 8, __ Vt. __, __ A.3d __.

2

and put his hands up. He exclaimed, "I was walking by." Officer Hodges replied that defendant had been in his personal space. Defendant told the officers he was going to his bus stop, which required continuing down the street past the bar. The officers ordered him not to go that way.

¶ 4. Defendant began yelling profanities. Officer Hodges said he told defendant to leave and "actually kind of turned my back to kind of try to end the encounter," but defendant stayed where he was. Officer Hodges testified that "[a]fter he refused to [leave] and he started using more profanities, that's when we decided to take him into protective custody." At the hearing, Officer Hodges said that he considered defendant's yelling "tumultuous," but that he did not observe any behavior by defendant that would indicate defendant might physically injure someone or become violent.

¶ 5. As the officers put defendant into a cruiser, he made his body go limp. He was charged with resisting arrest for this conduct.[2] Sometime after defendant was taken into custody, he kicked a police officer.[3]

¶ 6. Defendant was charged with disorderly conduct, simple assault, and resisting arrest. He moved to suppress all evidence following the push and order not to walk by the bar, arguing that they constituted an illegal stop and seizure without which none of his behavior that formed

---

[2] Before oral argument, the State filed a notice of supplemental authority and concession of error with this Court, explaining that because a taking into protective custody is not an arrest, it did not oppose vacatur and remand of defendant's conviction for resisting arrest. As it is this Court's general practice to reverse without discussion when the State has confessed error, we vacate the conviction for resisting arrest. See State v. Vezina, 2015 VT 56, ¶ 20, 199 Vt. 175, 121 A.3d 1195.

[3] At the hearing on defendant's motion to suppress and dismiss, the parties' evidence was focused almost exclusively on the disorderly-conduct charge. The State did not introduce any evidence concerning the assault charge. Defendant's motion to dismiss, citing Officer Hodges's affidavit of probable cause, recounts that the alleged assault occurred after defendant was transported first to the "ACT 1" facility, which declined to admit him, and then to the University of Vermont Medical Center, where defendant allegedly struck Officer Hodges in the shoulder with his foot while officers attempted to "extract" him from the police cruiser and place him in a wheelchair.

the basis for the three charges would have occurred. He also argued that the disorderly-conduct charge should be dismissed because there was insufficient evidence to support it. The State countered that no illegal stop or seizure occurred: The temporary detention of the push was justified because it would have been reasonable for Officer Hodges to believe he was in danger when defendant walked toward him, and the officers had a reasonable basis to keep defendant from walking by the bar. As to the disorderly-conduct charge, the State argued that "there is sufficient evidence that the second interaction with the officers, taken in its entirety, did constitute disorderly conduct by tumultuous behavior" because "[t]he combination of coming directly towards Ofc. Hodges and nearly colliding with him and the violent verbal outburst made the defendant's conduct tumultuous."

¶ 7. The trial court held that Officer Hodges was justified in pushing defendant as an act of self-defense, but the officers had no reasonable basis to order defendant to avoid walking by the bar. It suppressed defendant's statements made in response to the officers' order to avoid the bar, reasoning that the statements were the result of the officers having wrongfully prolonged their encounter with defendant. The State did not challenge that suppression ruling on appeal. With respect to the disorderly-conduct charge, the trial court concluded that, even excluding the suppressed evidence concerning defendant's verbal outburst following the order to go around the bar, the evidence that defendant had walked toward Officer Hodges in such a manner that they nearly collided was sufficient to support the disorderly-conduct charge. The trial court did not directly address the assault charge, but by limiting its suppression order only to the statements defendant made during the exchange following his encounter with Officer Hodges, rather than extending it to everything that happened thereafter, the court essentially allowed the State to proceed with that charge.

¶ 8. Defendant moved for reconsideration, arguing that the suppressed statements had provided the basis for the disorderly-conduct charge, and without evidence of those statements,

4

the charge should be dismissed. The court denied the motion, reasoning that defendant's move toward Officer Hodges could support the charge.

¶ 9. Defendant and the State subsequently entered into a conditional plea agreement pursuant to which defendant pled no contest on all three charges and could appeal the trial court's findings and orders regarding his motion to suppress and dismiss. See V.R.Cr.P. 11(a)(2).

¶ 10. On appeal, defendant renews his argument that the disorderly-conduct charge should be dismissed, arguing that his behavior could not be characterized as fighting, violent, tumultuous, or threatening, as the statute requires. He also argues that because the trial court found that the officers unlawfully prolonged the stop, it should have suppressed all subsequent evidence, including the evidence of his later action in kicking a police officer.

¶ 11. The State contends that defendant's conduct of attempting to collide with the officer constituted violent, tumultuous, or threatening behavior. It argues that because it had authority to take defendant into protective custody,[4] the offense of simple assault on a police officer, which occurred while defendant was in protective custody, was causally unconnected to the order to stay away from the bar, and thus even if that order wrongfully prolonged the encounter, suppression of the assault is not warranted.

## I. Disorderly-Conduct Charge

¶ 12. We conclude that the evidence, taken in the light most favorable to the State, does not tend to show beyond a reasonable doubt that defendant committed the offense of disorderly conduct through fighting or violent, tumultuous, or threatening behavior, and accordingly reverse the trial court's denial of defendant's motion to dismiss.

---

[4] Defendant did not contest the officers' taking him into protective custody until oral argument, at which point he argued there was no basis for the protective custody. We generally do not consider issues raised for the first time at oral argument, and we decline to do so here. State v. Sullivan, 2013 VT 71, ¶ 26 n.*, 194 Vt. 361, 80 A.3d 67.

¶ 13.    Whether the State has met its burden under Vermont Rule of Criminal Procedure 12(d) is a question of law, which we review without deference to the trial court.  State v. Scales, 2019 VT 7, ¶ 8, __ Vt. __, __ A.3d __.  Rule 12(d) allows a defendant to "move for dismissal of the indictment or information on the ground that the prosecution is unable to make out a prima facie case," and the court must dismiss the indictment or information if the State "does not establish by affidavits, depositions, sworn oral testimony, or other admissible evidence that it has substantial, admissible evidence as to the elements of the offense . . . sufficient to prevent the grant of a motion for judgment of acquittal at the trial."  V.R.Cr.P. 12(d)(1)-(2).  In making this determination, the court reviews the evidence "in the light most favorable to the State, excluding modifying evidence" to determine whether it "would fairly and reasonably tend to show defendant committed the offense, beyond a reasonable doubt."  Scales, 2019 VT 7, ¶ 9 (quotations omitted). In this case, the sole evidence presented at the hearing on defendant's motions to suppress and dismiss was the testimony of two officers who were at the scene and three clips from their body-mounted cameras.  We rely solely on this evidence in assessing the sufficiency of the State's case as to disorderly conduct.  See id. ¶ 16 (rejecting State's invitation to review officer's affidavit of probable cause in reviewing trial court's denial of defendant's motion to dismiss because court should review only evidence actually presented to trial court in Rule 12(d) hearing).

¶ 14.    A person commits the offense of disorderly conduct by "engag[ing] in fighting or in violent, tumultuous, or threatening behavior" with an "intent to cause public inconvenience or annoyance, or recklessly creat[ing] a risk thereof."  13 V.S.A. § 1026(a)(1).[5]  While attempting to collide with a police officer could in some circumstances constitute disorderly conduct, the evidence here is insufficient to fairly and reasonably tend to show beyond a reasonable doubt that,

---

[5] The disorderly-conduct statute identifies four other bases for a disorderly-conduct charge that are not applicable here.  See 13 V.S.A. § 1026(a)(2)-(5).

by walking toward Officer Hodges, defendant engaged in fighting or violent, tumultuous, or threatening behavior.

¶ 15.    The evidence does not show that defendant engaged in fighting.  "Fight" means "to contend in battle or physical combat."  Fight, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/CQ7U-W769].  We have held, for example, that punching another person can be fighting.  State v. Albarelli, 2016 VT 119, ¶ 21, 203 Vt. 551, 159 A.3d 627.  There is no evidence in the record of physical combat; the record, viewed in the light most favorable to the State, simply shows that defendant approached an officer too close, and the officer pushed him back.[6]  The testimony of Officer Simon Bombard, one of the officers with Officer Hodges, describing the moment when defendant walked toward Officer Hodges, underscores this point:

Q:    And when [defendant] arrived at your location, what happened?

A:    He approached us again.

Q:    How did he approach you?

A:    How was his demeanor?

Q:    No, how did he approach you physically?

A:    He walked up to us.

Q:    And when he arrived, what happened?

A:    We engaged in another verbal conversation with him.

Q:    Specifically, before the verbal conversation, what happened between him and any other officers who were there?

A:    He approached Officer Hodges and Officer Hodges had to push him back.

---

[6]  The State introduced body-camera footage, centered on Officer Hodges, that shows Officer Hodges reach his arm out of the frame, then pivots to show defendant standing with his hands up, saying "I was walking by." There is no body-camera footage that shows defendant's approach to Officer Hodges.

7

Officer Bombard then said he believed Officer Hodges had pushed defendant because defendant had been aggressive the first time they spoke, and it was uncommon for someone in that situation to return, so he believed defendant returned to confront the officers. Officer Bombard noted that officers are trained to keep "a reactionary gap of at least five feet," and Officer Hodges pushed defendant because he had come closer than that. The officers' testimony—while it might indicate defendant was angry and behaving oddly—did not indicate defendant was engaged in anything approaching fighting.

¶ 16. We reject the contention that defendant engaged in violent behavior for similar reasons. "Violent" means using "unjust and improper force." State v. Amsden, 2013 VT 51, ¶ 18, 194 Vt. 128, 75 A.3d 612 (quotation omitted). We have found that the evidence supported a finding of violent behavior where a defendant "kicked and resisted arrest and had to be restrained with ankle cuffs, handcuffs, and a seatbelt" and attempted to bite a police officer. State v. Begins, 147 Vt. 45, 47, 509 A.2d 1007, 1008 (1986). Likewise, we found that the evidence supported a finding of violent behavior where the defendant struck a woman on the arm, leaving a red mark. State v. O'Connell, 147 Vt. 60, 67, 510 A.2d 167, 171 (1986). Here, however, there is no evidence that defendant used any amount of force on Officer Hodges, let alone unjust and improper force.

¶ 17. Likewise, the evidence does not support the charge that defendant engaged in tumultuous behavior. While we have never conclusively defined "tumultuous behavior," we have relied on the dictionary definition of "tumult" to inform our understanding that it can mean "the commotion and agitation of a large crowd" or a "violent outburst." State v. Lund, 144 Vt. 171, 179, 475 A.2d 1055, 1060 (1984) (quotation omitted), overruled on other grounds by State v. Dumont, 146 Vt. 252, 499 A.2d 787 (1985) and State v. Begins, 148 Vt. 186, 531 A.2d 595 (1987). We have found that a hospitalized defendant engaged in tumultuous behavior when she was loud and disruptive and repeatedly banged her hospital bed into the wall. Amsden, 2013 VT 51, ¶ 19. For the same reasons that the evidence cannot support the charge that defendant engaged in

8

fighting or violent behavior, it does not support the charge that he engaged in tumultuous behavior. The officers' testimony—which is the only evidence as to what happened when defendant walked up to Officer Hodges—does not indicate that defendant agitated a crowd or was engaged at that time in a violent outburst or that his behavior was otherwise tumultuous. Officer Hodges's testimony is particularly instructive on this point. Officer Hodges acknowledged that as defendant walked toward him, defendant's arms were not swinging, he was not kicking, and his gait was normal. When defense counsel asked, "Besides yelling and being very angry, did you, at any point, observe [defendant] with clenched fists or any behavior that would indicate that he was physical[ly] threatening anyone," Officer Hodges answered, "Yes, I would say yelling the things that he was yelling . . . is tumultuous behavior." When asked if defendant's conduct—"not what he was yelling"—would indicate that he might injure someone or become violent, Officer Hodges said no. Because the trial court's order appeared to suppress both the fact and content of defendant's yelling, and we construe it as having done so, the only evidence that could support the disorderly-conduct charge is the evidence of defendant's conduct in walking toward Officer Hodges, which Officer Hodges said did not indicate intent to injure or become violent. This clearly does not rise to the level of tumultuous conduct. Even if the trial court had not suppressed the fact of defendant's subsequent yelling, the evidence would still not fairly and reasonably tend to show defendant engaged in tumultuous conduct.

¶ 18. Finally, we conclude that the evidence could not support a finding that defendant engaged in threatening behavior, although this is the closest question. Threatening "behavior must convey the intent to do harm to another person." State v. Albarelli, 2011 VT 24, ¶ 18, 189 Vt. 293, 19 A.3d 130. The standard is "objective and turn[s] on how a reasonable person would view defendant's behavior." Id. ¶ 14. For example, we have found that where a defendant grabbed an officer's flashlight and tried to take it, "the jury could find that the defendant attempted to take the flashlight away from the officer to use as a weapon against him" and "the act of grabbing the

9

flashlight could be found to be threatening behavior, done to communicate the intent to harm." State v. Cole, 150 Vt. 453, 456–57, 554 A.2d 253, 255 (1988). In contrast, we found a defendant did not engage in threatening behavior where he stood near a volunteer supporting the Obama presidential campaign and came within two feet of one witness, ranted for twenty minutes against the Obama candidacy, and occasionally gesticulated wildly. Albarelli, 2011 VT 24, ¶ 22. We held this gave "no indication that he was going to harm" anyone. Id. We noted that the defendant's rant "did not target a specific individual" and his behavior had no "significant physical component," and that the absence of an explicit threat was not overcome by "a strong implication that harm may come to [a particular person]" or a "comment or act coupled with an aggressive move toward the victim." Id. ¶¶ 20-23 (quotation omitted).

¶ 19. While walking on a collision course toward a police officer could, like attempting to take an officer's flashlight, communicate an intent to harm the officer, walking at a normal gait to within four feet of an officer, without any accompanying threatening words or gestures, does not. This case is closer to Albarelli than Cole. Defendant's behavior in returning to the group of officers, at some point possibly looking at Officer Hodges and then looking away as he approached, and coming within four feet of Officer Hodges had a more significant physical element than the defendant in Albarelli's conduct in standing near the volunteer table and ranting. However, defendant did not explicitly threaten Officer Hodges, make any actions strongly implying he would harm Officer Hodges, or make a "comment or act coupled with an aggressive move toward" him. Id. ¶ 23 (quotation omitted). Unlike in Cole, where a jury could clearly find that the defendant's actions in grabbing the officer's flashlight and attempting to take it strongly implied an intent to harm the officer, defendant's actions here were simply too ambiguous to convey an intent to harm Officer Hodges.

## II. Assault Charge

¶ 20.    We reject defendant's argument that because the trial court found that the officers unlawfully prolonged their encounter with him by ordering him not to walk by the bar, it should have suppressed all subsequent evidence, including the evidence that he kicked a police officer later that evening, for which he has been charged with simple assault on a law-enforcement officer. We conclude that defendant's action in kicking the officer is causally distinct from the officers' actions in ordering him around the bar, and thus suppression is not warranted.

¶ 21.    We review a trial court's factual findings on a motion to suppress for clear error, and we examine the legal questions that the motion raises without deference to the trial court. State v. Alexander, 2016 VT 19, ¶ 13, 201 Vt. 329, 139 A.3d 574. Defendant does not challenge the trial court's factual determinations, which included that after Officer Hodges reached out his hand and pushed defendant away to prevent defendant from colliding with him, the officers ordered defendant to take a route to his bus stop that did not take him past the bar. We will accordingly review only the trial court's legal conclusion that suppression was not warranted. State v. Cook, 2018 VT 128, ¶ 4, __ Vt. __, 203 A.3d 509.

¶ 22.    Evidence obtained as a result of an illegal search or seizure cannot be admitted at trial if the State obtained that evidence "by exploitation of that illegality," but it may be admitted if the State came to the evidence "by means sufficiently distinguishable to be purged of the primary taint" of illegality. Wong Sun v. United States, 371 U.S. 471, 488 (1963) (quotation omitted). Thus, evidence need not be suppressed as " 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Id.; see also State v. Alexander, 157 Vt. 60, 63, 595 A.2d 282, 284 (1991) (noting fact that police caused challenged "stop in a 'but for' sense is not sufficient to require suppression of the fruits of the stop").

¶ 23.    Even assuming, as the trial court found, that the officers unlawfully prolonged their encounter with defendant by ordering him around the bar and that, as defendant argues, his action

11

of kicking an officer later that night would not have happened but for the prolonged encounter, we conclude that defendant's assault on the officer is so causally distinct that the evidence of it could not be characterized as fruit of the poisonous tree. A "defendant's commission of a criminal act in the course of an illegal arrest or search may be sufficient to dissipate the taint of illegality," in which case the evidence of the new criminal act may be admissible, even though it would not have happened but for the illegal search or seizure. Alexander, 157 Vt. at 63, 595 A.2d at 285. Indeed, "[s]trong policy reasons support treating these actions as 'distinct' crimes subject to prosecution despite their close causal nexus to illegal police conduct." Id. at 63-64, 595 A.2d at 285 (quoting United States v. Bailey, 691 F.2d 1009, 1017–18 (11th Cir. 1982) for proposition that "extending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct"). Defendant's new criminal action in kicking the officer was causally distinct from the officers' actions—even assuming, as the trial court found, that the officers unlawfully prolonged their encounter with defendant—and thus need not be suppressed. See id. at 62, 595 A.2d at 284.

Defendant's conviction of disorderly conduct is vacated and his motion to dismiss the disorderly-conduct charge is granted. Defendant's conviction for resisting arrest is vacated and the charge is dismissed. The denial of defendant's motion to suppress as it relates to the acts underlying the assault charge, and his conviction on that charge, are affirmed.

FOR THE COURT:

_____

Associate Justice

12