

# In the Court of Criminal Appeals of Texas

No. PD-0170-22

JAMES CALVIN MASSEY,
*Appellant*

v.

THE STATE OF TEXAS

On State's Petition for Discretionary Review
From the Second Court of Appeals
Tarrant County

YEARY, J., announced the judgment of the Court and filed an opinion in which KELLER, P.J., and KEEL and SLAUGHTER, JJ., joined. NEWELL, J., filed a concurring opinion in which HERVEY, RICHARDSON, and SLAUGHTER, JJ., joined. WALKER and MCCLURE, JJ., dissented.

After legally detaining Appellant for lack of a proper registration sticker on his truck, an officer conducted an investigative pat-down

search of Appellant's person. When Appellant forcefully resisted that search, the officer tased and handcuffed him. The officer subsequently discovered methamphetamine on the ground near where Appellant had been standing.

In the trial court, Appellant filed a motion to suppress the methamphetamine. In response to that motion, the trial court decided that the officer's investigative pat-down search (also known as a *Terry* search) was illegal.[1] But the trial court nevertheless concluded that the taint of the illegal *Terry* search was attenuated by Appellant's commission of the dual offenses of resisting search and evading detention.[2] As a result, the trial court denied his motion.

The Second Court of Appeals reversed Appellant's conviction. It explained that Appellant's commission of resisting search and evading detention in response to the officer's unlawful pat-down did *not* constitute "a severe departure from the common, if regrettable, range of responses" that should be expected. It therefore concluded that these offenses did not "constitute intervening circumstances" for purposes of an attenuation-of-taint analysis, under *Utah v. Strieff*, 579 U.S. 232

---

[1] Whether the investigative pat-down search was valid under the criteria announced by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), is not before us. For purposes of resolving the State's petition for discretionary review, we assume without deciding that it was not valid.

[2] *See* TEX. PENAL CODE § 38.03(a) ("A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting . . . [a] search . . . of the actor . . . by using force against the peace officer[.]"); *id*. § 38.03(b) ("It is no defense to prosecution under this section that the . . . search was unlawful."); *id*. § 38.04(a) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to . . . detain him.").

(2016). *Massey v. State*, 649 S.W.3d 500, 518 (Tex. App.—Fort Worth 2022). We granted the State's petition for discretionary review to examine the court of appeals' decision.[3]

## I. BACKGROUND

Appellant pled guilty to possession of methamphetamine in an amount more than one gram but less than four grams. Pursuant to a plea agreement, he was sentenced to five years' confinement in the penitentiary. TEX. HEALTH & SAFETY CODE § 481.116(c).[4] Appellant preserved his right to appeal the trial court's ruling on his pretrial motion to suppress the methamphetamine, which he contended was obtained illegally because the arresting officer, among other things,

---

[3] The Court granted the State's first ground for review, which asked: "When a defendant commits a new offense immediately following an illegal search or seizure, does the new offense cease to be an intervening circumstance attenuating taint unless it is violent and/or unforeseen?" We also granted the State's third ground for review: "Is an officer in a public place not in a 'lawful place' under the plain view analysis merely because a Fourth Amendment violation occurred?" But our resolution of the State's first ground renders discussion of the State's third ground moot.

[4] At the same time, Appellant was adjudicated guilty on a prior indictment for a prior commission of the same offense, for which he had previously been placed on deferred adjudication. For that prior offense, Appellant was given another five-year sentence, and the two sentences were ordered to run concurrently. The court of appeals held that the trial court's decision to proceed to adjudicate this prior conviction for possession of methamphetamine was supported by additional evidence, other than Appellant's commission of the later offense. The State showed that Appellant failed to report to his probation officer for three consecutive months. So, the court of appeals' holding about whether evidence obtained after the illegal pat-down must be suppressed applies only with respect to the more recent conviction. *Massey*, 649 S.W.3d at 512. We refused Appellant's petition for discretionary review, in which he challenged the court of appeals' resolution of his appeal of the prior conviction.

conducted an illegal pat-down search.

At a hearing on Appellant's motion to suppress, Sergeant Richard Lukowsky was called to testify. Lukowsky worked with the Azle Police Department, just outside of Fort Worth. In addition to his testimony, his body-cam footage was admitted showing his interactions with Appellant on the day of the arrest.

The evidence showed that Lukowsky was patrolling at 11 a.m., on February 16, 2020, when he spotted a pickup truck without a proper registration sticker. Lukowsky followed the truck into a gas station/convenience store parking lot. By the time Lukowsky caught up with Appellant, Appellant was already out of his truck, near the entry to the store.

Lukowsky asked Appellant "to step over to where [Lukowsky] was." Appellant complied and walked over. Appellant then asked what was going on, and Lukowsky told Appellant that "his registration was out" on his truck.[5] With Appellant's permission, Lukowsky retrieved Appellant's wallet from the truck and handed it to Appellant, who in turn handed his driver's license back to Lukowsky.

According to Lukowsky, in the course of that exchange, he noticed that Appellant's hands were shaking more than what he considered

---

[5] At first, Lukowsky testified that Appellant's truck did not have a registration sticker. But, as explained earlier, at another point in his testimony, he claimed that he informed Appellant that "his registration was out" on his truck. Whether the registration sticker was entirely missing or merely expired makes no difference to the issues we address in this opinion. Suffice it to say that, for the sake of this opinion, we operate on the presumption that Appellant's initial detention was legal based on the status of his truck's registration.

normal for such an encounter, and Appellant otherwise appeared very nervous. Knowing that this was a "high drug area," that narcotics arrests had been made at this location on "several" occasions, and that he was by himself, Lukowsky instructed Appellant "to turn around so [he] could pat [Appellant] down just for [Lukowsky's] safety."

At first, Appellant seemed ready to comply, turning around and raising his arms slightly at the elbow. But when Lukowsky began to pat on the outside of the right-hand pocket of Appellant's cargo shorts, Appellant reached down toward his left-hand pocket. Lukowsky grabbed Appellant's hand and ordered him not to go into his pocket. But Appellant persisted in moving toward the pocket, "ripped" away from Lukowsky's hand,[6] and turned around to face Lukowsky, while slowly backing away from him.

At this point, Lukowsky called for backup and drew his weapon, intending to handcuff Appellant. Appellant told Lukowsky "something along the lines" of "I'm not going to go with you," and "you're just going to have to shoot me." Eventually Appellant approached and began to move around an air pump machine, which he grasped in such a way that Lukowsky could not see his left hand.

At that point, an off-duty Fort Worth police officer arrived and tried to assist Lukowsky in taking Appellant into custody. Lukowsky ordered Appellant to comply several times, and after he then warned

---

[6] Lukowsky used the descriptor "ripped" in his testimony. From the body-cam video, the trial court gleaned that Appellant "resisted the search by tensing his left arm, pulling away from Sgt. Lukowsky, and physically grabbing Sgt. Lukowsky's left arm." Trial Court's Findings of Fact and Conclusions of Law at 4. Our review of the body-cam footage bears this description out.

Appellant and the off-duty officer that he was about to tase Appellant, Lukowsky carried through on his warning and tased Appellant, who then fell to the ground. With the continuing help of the off-duty Fort Worth officer, Lukowsky handcuffed Appellant.

Lukowsky then discovered a bag of methamphetamine on the ground next to the air pump machine. As Lukowsky's body-cam footage confirms, the bag had not been there only moments before. Lukowsky believed that Appellant had retrieved it from his left-hand pocket unseen and then dropped it as a result of being tased.

In its written findings of fact and conclusions of law, the trial court found that the initial detention of Appellant was justified—because of the absence of a valid registration sticker on Appellant's truck. In spite of that, the court found that Lukowsky's initial *Terry* pat-down search of Appellant was illegal because he lacked reasonable suspicion to justify it. But the trial court also found that Appellant's conduct in response to Lukowsky's illegal *Terry* pat-down search constituted the offenses of: (1) resisting search, and (2) evading detention. And as a result, the trial court concluded, the "taint" from the primary misconduct was effectively "purged" by Appellant's commission of the new offenses.

The court of appeals rejected the trial court's conclusions. *Massey*, 649 S.W.3d at 516−18. Citing court opinions from other jurisdictions, the court of appeals essentially held that "milder cases of resisting arrest [do] not constitute intervening circumstances" for purposes of an attenuation of taint analysis. *Id.* at 518. The court explained that "[o]ther courts have held that simply running away from the detaining

officers or attempting to dispose of evidence will not necessarily dissipate the taint." *Id*. To hold otherwise, the court observed, would simply encourage the police to engage in improprieties in the hope that a suspect's adverse reaction (so long as it was not too extreme) would generate incriminating evidence. *Id*. Having found no intervening circumstance, the court of appeals then emphasized the temporal proximity of the discovery of the evidence of the primary misconduct over the purposefulness and flagrancy of the police misconduct and concluded that the taint was not attenuated. *Id*. (citing *State v. Jackson*, 464 S.W.3d 724, 732 (Tex. Crim. App. 2015)).

## II. ANALYSIS

### A. Attenuation of Taint

The federal exclusionary rule requires the suppression of evidence obtained either directly or derivatively ("fruit of the poisonous tree") from police conduct that violates the Fourth Amendment. *Strieff*, 579 U.S. at 237. But whether the discovery of evidence was the "fruit" of Fourth Amendment misconduct is not a strictly "but/for" inquiry. *Jackson*, 464 S.W.3d at 731. Suppression of evidence is a "last resort," not a "first impulse." *State v. Mazuca*, 375 S.W.3d 294, 300 (Tex. Crim. App. 2012) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Accordingly, the United States Supreme Court has identified exceptions to the exclusionary rule, one of which is the attenuation-of-taint doctrine. *Strieff*, 579 U.S. at 238.

Under the attenuation-of-taint doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the discovery of evidence is remote or has been interrupted by some

intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Id*. (quoting *Hudson*, 547 U.S. at 593). To determine whether this connection is sufficiently "remote or has been interrupted," the United States Supreme Court has required courts to consider three factors known as the *Brown* factors: (1) the temporal proximity between the misconduct and discovery of the evidence; (2) the presence of any intervening circumstances; and (3), the purpose and flagrancy of the police misconduct. *Id*. at 239 (quoting *Brown v. Illinois*, 422 U.S. 590, 603−04 (1975)). Also, this Court said, in *Mazuca*, that either the first factor ("temporal proximity") or the third factor ("purpose and flagrancy") will take on greater significance in any given case, depending upon whether the second factor (any "intervening circumstances") is present. *Jackson*, 464 S.W.3d at 732 (quoting *Mazuca*, 375 S.W.3d at 306−07). So, when there *is* an intervening circumstance as contemplated by *Brown*, the *Brown* inquiry emphasizes the third factor—the purpose and flagrancy of the police misconduct. *Id*., at 733 ("[G]iven such an intervening circumstance, *Mazuca* dictates that a reviewing court should emphasize the third *Brown* factor, which asks whether the police purposefully and flagrantly disregarded Appellee's Fourth Amendment rights.").

### B.  A "New Offense" as an Intervening Circumstance

Many courts, including this Court, have recognized that "new offenses" committed by a person who is the focus of alleged police misconduct are necessarily intervening circumstances as contemplated by *Brown*. In addition, many of those courts seem to have concluded that

the commission of a new offense, when considered as an intervening circumstance, will almost invariably outweigh both of the other two *Brown* factors and establish a *per se* attenuation of taint, at least with respect to evidence of the new offense itself. Thus, if a defendant commits a new offense in response to police misconduct, the police misconduct will almost never result in suppression of evidence of the *new* offense that was committed in reaction or in response to it.

In *State v. Iduarte,* 268 S.W.3d 544 (Tex. Crim. App. 2008), for example, a suspect pulled a gun on a police officer who had entered his apartment without a warrant during a domestic-dispute call. The trial court found that "the officer's actions overstepped the limits of his authority." Although the new offense would likely not have occurred "but for" the alleged police misconduct, this Court decided that acquisition of evidence pertaining to this new aggravated assault "was not causally connected to the officer's allegedly illegal entry." *Id.* at 551. The Court explained:

> [The exclusionary rule] does not . . . provide limitless protection to one who chooses to react illegally to an unlawful act by a state agent. If that were allowed, the genuine protection that the exclusionary rule provides would be undermined. Here, evidence of the charged offense did not exist before the officer's challenged actions because the charged offense had not yet occurred; the evidence showed a subsequent independent criminal act that was not causally connected to an unlawful entry by a state agent. Therefore, the exclusionary rule does not apply to this case.

*Id.* The Court essentially treated the suspect's illegal response to the police officer's alleged misconduct as an intervening circumstance that

was sufficient, by itself, to break the causal connection—even without reference to the other two *Brown* factors.[7]

Other courts, both before and since this Court decided *Iduarte*, have ruled similarly, that evidence of the commission of an offense in response to unconstitutional police conduct will not be suppressed under the exclusionary rule.[8] Like this Court in *Iduarte*, these courts seem to have reached that conclusion without explicitly considering any *Brown* factors other than the second one—"presence-of-intervening-circumstances."[9] They almost seem to treat that intervening

---

[7] *See* George E. Dix & John M. Schmolesky, 40 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 7:59, at 383 (3d ed. 2011) (explaining that, "[i]f a defendant is charged with criminal activity committed in the wake of unlawful law enforcement behavior, several courts have held that the defendant's criminal conduct itself constitutes a significant intervening circumstance in determining whether the taint of the officers' illegal conduct tainted the evidence of the defendant's criminal act. That criminal conduct may even be itself sufficient to automatically attenuate the taint."); *see also id.*, at 386 (suggesting, near the end of Section 7:59, that this understanding was adopted by this Court in *Iduarte*).

[8] *E.g.*, *People v. Villarreal*, 152 Ill.2d 368, 380, 604 N.E.2d 923, 929 (1992); *State v. Mierz*, 127 Wash.2d 460, 471−75, 901 P.2d 286, 291−94 (1995); *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982); *State v. Brocuglio*, 264 Conn. 778, 790, 826 A.2d 145, 153 (2003); *United States v. Schmidt*, 403 F.3d 1009, 1016 (8th Cir. 2005); *State v. Herrerra*, 211 N.J. 308, 336, 48 A.3d 1009, 1026 (2012); *State v. Suppah*, 358 Or. 565, 577, 369 P.3d 1108, 1115 (2016); *People v. Tomaske*, 440 P.3d 444, 449 (Colo. 2019).

[9] *See, e.g.*, *United States v. Bailey*, 691 F.2d at 1017 ("Unlike the situation where in response to unlawful police action the defendant merely reveals a crime that already has been or is being committed, extending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct."); *State v. Mierz*, 127 Wash.2d at 475,

circumstance offense as all-by-itself *determinative* of whether the exclusionary rule applies.[10]

## C. A "New Offense" as an Intervening Circumstance Exposing a "Different Offense"

Of course, the question in this case is not whether to suppress evidence of Appellant's *new* offenses of resisting arrest and evading detention.[11] Insofar as we know, Appellant has not even been formally charged with either of those offenses. Instead, the question is whether

---

901 P.2d at 293 ("Encouraging citizens to test their beliefs through force simply returns us to a system of trial by combat. The proper location for dealing with such issues in a civilized society is in a court of law."); *see also, e.g., Martinez v. State*, 91 S.W.3d 331, 340 (Tex. Crim. App. 2002) ("Appellee's argument [that failure to give statutorily required warnings prior to his grand jury testimony should result in exclusion of evidence that he perjured himself], carried to its extreme logical conclusion, would provide legal protection to the murderer of a police officer, who proves that the officer detained him without articulable suspicion prior to the murder.").

[10] *But see State v. Tapia*, 414 P.3d 332, 340−41 (N.M. 2018) (applying a full-blown *Brown* attenuation-of-taint analysis to conclude that the new offense of signing a false name on a traffic citation did not necessitate excluding evidence of that forgery on the ground that the initial traffic stop had been unlawful).

[11] There are a total of four offenses to be considered in this case: 1) the initial offense of driving without a valid registration sticker; the subsequent offenses of 2) resisting search and 3) evading detention; and 4) the ultimately discovered offense of possession of methamphetamine. Under *Iduarte*, exclusion of evidence of the offenses of 2) resisting search and 3) evading detention would not be required even if there was police misconduct preceding those offenses, under the "new offenses" rationale. But that does not necessarily resolve the question of whether evidence of 4) methamphetamine possession—an offense that was already underway even before the traffic stop occurred, but which did not come to light until after Appellant had committed offenses 2) and 3)—may also be admitted absent consideration of the full panoply of *Brown* factors.

Appellant's commission of those new offenses constitutes an intervening circumstance under *Brown*, so as to attenuate the taint of police misconduct with regard to evidence of still *another*, different offense—possession of a controlled substance—discovered subsequent to the alleged police misconduct.

In similar circumstances, some courts have seemed to consider the new offense—committed in response to the original alleged police misconduct—as independently determinative in favor of attenuation. Those courts appear to conclude that the new offense brakes the causal connection, not only between the alleged police misconduct and the new offense committed in response to it, but also between the misconduct and the subsequent discovery of evidence of even *another*, different offense.[12] But we ultimately conclude that, at least until the United

---

[12] *See United States v. Bailey*, 691 F.2d at 1017−18 (treating, in a drug possession case, the appellant's arrest for unlawfully fleeing detention as an intervening circumstance that justified a search incident to that arrest, and finding that the offense purged any taint from the initial illegal detention itself, without reference to any other *Brown* factor); *United States v. Sprinkle*, 106 F.3d 613, 619 (4th Cir. 1997) (rejecting, in an illegal possession of a firearm case, the appellant's argument that the initial unlawful stop should result in suppression of the gun he subsequently drew on the officers because it "overlook[ed] whether his own illegal acts after the initial stop [would] trigger an exception to the exclusionary rule of the 'fruit of the poisonous tree' doctrine," and concluding that such an exception would apply, while making no reference to the particular *Brown* factors); *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006) (deciding that evidence of cocaine possession is not subject to suppression when the defendant illegally fled from an arguably illegal detention, without any reference to the *Brown* factors); *Kavanaugh v. Commonwealth*, 427 S.W.3d 178, 181 (Ky. 2014) (deciding that evidence of cocaine possession following an alleged illegal *Terry* stop was not subject to suppression when the appellant assaulted the officer before the cocaine was discovered, and concluding that the intervening assault attenuated the taint of the illegal *Terry* stop without reference to other *Brown* factors); *Wilson v. United States*, 102 A.3d 751, 753−54 (D.C.C.A. 2014) (deciding, in a possession

States Supreme Court says otherwise, the admissibility of this category of evidence—of a still different offense—should be considered with continued reference to all three of the *Brown* factors. This approach, we think, is to be preferred, since it considers the temporal proximity of the discovery of the evidence to the original misconduct, the intervening circumstance of the new offense, and also the purpose and flagrancy of the primary misconduct leading to the discovery of the "different offense" evidence.

### D. Addressing The Court of Appeals' View

In refusing to regard Appellant's offenses here as an intervening circumstance at all, the court of appeals observed:

> [I]f the crime is petty and relatively predictable as a product of an unlawful detention or search, the evidence revealed is better viewed as an extended derivation of the illegal police action. "Incriminating admissions and attempts to dispose of incriminating evidence are common and predictable consequences of illegal arrests and searches, and thus to admit such evidence would encourage such Fourth Amendment violations in future cases. LaFave, *Crimes committed in response to illegal arrest or search as a fruit*, 6 Search & Seizure § 11.4(j) (6th ed.).

*Massey*, 649 S.W.3d at 517−18. But we find it anomalous to, on the one hand, treat a new offense—however petty or predictable—as a nearly invariably determinative intervening circumstance in weighing the admissibility of evidence of the new offense itself, but then, on the other

---

of cocaine prosecution, that the cocaine was not subject to suppression after the appellant resisted what he claimed to be an unlawful arrest since his resistance constituted an intervening offense which, by itself, purged the taint of any misconduct).

hand, to refuse to treat the new offense as an intervening circumstance *at all* with regard to evidence showing the commission of another, different offense, unless the new offense is serious or unpredictable.

The way we see it, when evidence pertaining to a different offense is discovered subsequent to some police misconduct, but after the commission of a new offense by the accused, the new offense is still an intervening circumstance—regardless of its seriousness or predictability. The reasons that would justify an almost invariable rule for cases involving only evidence of the new offense itself—committed in response to police misconduct—do not apply, at least not as firmly, when the evidence discovered relates to a different offense. Therefore, we conclude that a faithful deference to the United States Supreme Court's decision in *Brown* requires this Court, under these circumstances, to conduct an attenuation-of-taint analysis, giving full consideration to all three of the *Brown* factors, but with particular emphasis placed on the third factor, which asks how purposeful or flagrant the police misconduct may have been. *See Mazuca*, 375 S.W.3d at 306−07 ("Under this scenario [where there is an intervening circumstance], the intervening circumstance is a necessary, but never, by itself, wholly determinative factor in the attenuation calculation, and the purposefulness and/or flagrancy of the police misconduct . . . becomes of vital importance.").

This approach more effectively serves the core exclusionary rule interest. It will deter police from deliberately engaging in misconduct in the manifest hope of *provoking* some illegal response, only to exploit that response by conducting an otherwise unwarranted search or seizure *for*

*the purpose of* uncovering evidence of still different offenses unrelated to the suspect's illegal response. And it also fits in well with the analyses that this Court undertook in *Jackson* and *Mazuca.*

In *Jackson*, police had installed an illegal global positioning system (GPS) tracking device on the defendant's car. 464 S.W.3d at 727. Prior to discovering drugs in the trunk of that car, however, the police had determined by radar that Jackson was speeding,[13] and they pulled him over for that (non-full-custodial-arrestable) offense. *Id*. The Court held that the independent radar verification of the speeding offense constituted an intervening circumstance leading up to the discovery of the evidence and then proceeded (consistently with *Mazuca*) to inquire into the purpose and flagrancy of the unlawful GPS device. *Id*. at 732−33. The Court did not stop to consider the relative seriousness of the intervening offense.

Also, in *Mazuca* itself, the Court determined that the discovery of outstanding arrest warrants for the defendant following an illegal traffic detention constituted an intervening circumstance. 375 S.W.3d at 308. The Court made that determination without ever asking how serious the offenses underlying the outstanding arrest warrants might have been. Instead, the Court's primary focus became, in light of the presence of the intervening circumstance, how purposeful and flagrant the illegal traffic stop—the primary misconduct—had been. *Id*. at 308−10.

None of the cases from other jurisdictions—that the court of appeals cited as persuasive authority—compellingly support its

---

[13] The Court has said that a motorist pulled over for speeding is not ordinarily susceptible to a full custodial arrest for that offense. *Azeez v. State*, 248 S.W.3d 182, 189−90 (Tex. Crim. App. 2008).

preferred approach. *Massey*, 649 S.W.3d at 517−18. Although they discuss the "seriousness" of the "new offense" as a consideration in the intervening circumstance factor, none clearly *hold* that a "new offense" will *only* be regarded as an intervening circumstance if it is sufficiently serious. Almost all of them appear to conduct a full-blown *Brown* analysis, referencing all three factors. None clearly support the proposition that, if the "new offense" is not serious, or is a predictable response to the primary misconduct, then it becomes unnecessary to consider and weigh the third *Brown* factor—the purposefulness and flagrancy of the police misconduct.[14] And to the extent, if any, that they might arguably support such a proposition, they are inconsistent with *Mazuca* and *Jackson*.

In short, we agree with the State that the court of appeals erred to conclude that, because Appellant's new offenses were both "petty" and "relatively predictable" as a reaction to Lukowsky's misconduct, they simply do not count as intervening circumstances in the *Brown* attenuation-of-taint analysis. *Massey*, 649 S.W.3d at 517−18. The court of appeals should have acknowledged that *any* "new offense" may constitute an intervening circumstance, even when it leads to evidence of some offense *other than*, and different from, the "new offense" itself. And as a result, the court of appeals should have focused its attention less on the first "temporal proximity" *Brown* factor and more on the third "purpose-and-flagrancy" *Brown* factor. *See Jackson*, 464 S.W.3d at 732

---

[14] *See State v. Alexander*, 157 Vt. 60, 595 A.2d 282 (1991); *United States v. Brodie*, 742 F.3d 1058 (D.C. Cir. 2014); *Johnson v. United States*, 253 A.3d 1050, 1058 (D.C. 2021); *State v. Owens*, 992 N.E.2d 939, 942−43 (Ind. Ct. App. 2013); and *Thornton v. State*, 465 Md. 122, 159−61, 214 A.3d 34, 56−57 (2019).

(quoting *Mazuca*, 375 S.W.3d at 306−07). It is to that proper analysis that we now turn.

### E. Application of Law to the Facts of this Case

It is certainly true, as the court of appeals concluded, that the temporal proximity *Brown* factor in this case "strongly favors suppression[.]" *Massey*, 649 S.W.3d at 518. Lukowsky discovered the contraband on the ground, where Appellant had apparently dropped it within about two and a half minutes (according to the body-cam video) from when the frisk began. When there is an intervening circumstance, the purposefulness and flagrancy of the police misconduct becomes vitally important. *Jackson*, 464 S.W.3d at 732. Here, Appellant's resistance to the *Terry* search was a new offense that constituted an intervening circumstance, shifting the proper emphasis onto the third *Brown* factor—the purposefulness and flagrancy of the misconduct. *Id.*

When Appellant pulled away from Lukowsky and grabbed his left arm to avoid the *Terry* search, he at least committed a resisting search offense under Section 38.03(a) of the Texas Penal Code. TEX. PENAL CODE § 38.03(a). There is no question that he intentionally used force to prevent Lukowsky, whom he knew to be a peace officer, from effecting a search of his person. *See Finley v. State*, 484 S.W.3d 926, 928 (Tex. Crim. App. 2016) ("Finley used force against the officers by pulling against the officers' force."). Also, the fact that the *Terry* search was deemed to be unlawful is not a defense for purposes of this statutory offense. *See* TEX. PENAL CODE § 38.03(b) ("It is no defense to prosecution under this section that the arrest or search was unlawful."). We conclude that this "new offense" constituted an intervening circumstance, and we focus our

inquiry primarily on the purposefulness and flagrancy of Lukowsky's misconduct in perpetrating the *Terry* search to begin with.

There is no suggestion in the record that the *Terry* search was pretextual—a deliberate ploy on Lukowsky's part to subvert Appellant's Fourth Amendment rights for the purpose of conducting a random search for evidence of an offense beyond the original offense for which he was detained: driving an unregistered vehicle.[15] From his testimony it appears that Lukowsky was genuinely concerned for his own safety. He was, after all, operating by himself, in a high crime area, and Appellant seemed to him to be more nervous than the circumstances warranted. That his subjective concern was not (we have assumed, for purposes of discretionary review) ultimately found to be borne out by sufficiently objective facts to justify even a limited *Terry* search for Fourth Amendment purposes does not make it any less sincere.

Appellant's "new offense" of resisting the search was an intervening circumstance. Because we also find no evidence that Lukowsky purposefully or flagrantly flouted Appellant's Fourth Amendment rights, we conclude that any taint from the illegal *Terry* pat-down search was attenuated. The trial court properly denied Appellant's motion to suppress the methamphetamine.

### III. CONCLUSION

Accordingly, we reverse the judgment of the court of appeals and

---

[15] *See* TEX. TRANSP. CODE § 502.473(a) ("A person commits an offense if the person operates on a public highway during a registration period a motor vehicle that does not properly display the registration insignia issued by the department that establishes that the license plates have been validated for the period.").

affirm the trial court's judgment.

**DELIVERED:**                                   April 26, 2023
**PUBLISH**